Parker C. J.
drew up the opinion of the Court. It seems very clear, on examination, that there are no good reasons for setting aside the verdict in this case.
The general objection stated in the argument is, that the way or road, from the deficiency of which the plaintiff received *152 his injury, was not legally laid out so as to be in truth a public or town wa7- Although the objection comes with an ill grace from the inhabitants who use and enjoy the way and keep it in repair as a town way, yet it is competent to them to take it.
It is said not to be a road, 1. Because it was not legally laid out by the selectmen ; and 2. Because it was never approved by the town.
The laying out by the selectmen is proved only by the warrant of four out of five of the selectmen, calling a meeting oí the inhabitants, to consider the report of the selectmen on the subject of the road described in the petition of S. Osgood and others. The second article of the warrant is, “ To see if the town will accept of a road laid out by the selectmen as follows,” (there is then a particular description of the road.) The warrant was recorded in the town books and is stated to have been duly served and regularly returned according to law and the directions therein. There being no prescribed form by which the selectmen are to do this kind of duty, and no provision that their doings shall be recorded before they are laid before the inhabitants for their approval, we do not see why this article in the warrant made and signed by the selectmen, is not sufficient evidence to prove that they had laid out the road. A written report in any form, which should contain a clear description of the road, would be sufficient. It might be accompanied by a plan or not, according to the circumstances. If there is a sufficient memorandum to enable the inhabitants of the town to understand the termini, distances and courses, and to enable the clerk to record it when approved, the law will be satisfied. This article in the warrant seems to have answered these purposes. It is quite as good a report to the town as a separate paper containing the same facts and signed by the selectmen would be.[1]
But it is objected to this warrant, that being signed by four only of the selectmen, (the board consisting of five,) it cannot be received as a laying out of the road, because, by the statute of 1786, c. 67, the authority to lay out town roads is given to the selectmen, without any provision that they may act by a *153 majority, and therefore the doings of the four in this respect are void. It does not necessarily follow, that because four only signed the warrant, which may be here called their report, the whole five did not perform the act. They certify that the road was laid out by the selectmen, but it not appearing by the return that the whole body were present, this perhaps would not be a sufficient answer to the objection, if the act could not be done by a major part of the board. We are satisfied that a board of selectman in this, as well as other branches of their duty, may lawfully perform their duty by a major part of the whole number. The distinction between agents appointed by individuals to do certain specified acts, and agents of the public partaking of a political or municipal character, was stated in the case of Damon v. Inhabitants of Granby, 2 Pick. 345.[1] The same distinction is adopted and held to be law in England, as appears by the cases in 3 T. R. 592, and 6 T. R. 388. It is also recognized in New York, in 6 Johns. R. 39.
Indeed it may be inferred from the very statute which authorizes the appointment of selectmen by towns, (Si. 1785, c. 75,) that the legislature intended they should act by majorities. The number is to be three, five, seven or nine, with the evident purpose and intent that the affairs committed to them should not be stayed by an equal vote ; and the manifest inconvenience which would result from requiring a unanimity in all the various transactions on which they are called to act, without doubt suggested the limitation of such a number as should on all occasions admit of a decision.
There are indeed some acts of the legislature which provide, that in certain cases the selectmen, or a major part of them, shall do the thing required ; but these undoubtedly arose from abundant caution, without attending, in the hurry of legislation, to the original organization of that body. There are also various statutes which impose duties upon selectmen without expressly giving the power to a majority, in cases where the absence of one, if the presence of all is necessary, would be attended with serious and irremediable mischief in the most *154 important concerns of the people; such as the elections of national and state representatives and other public agents, at which elections the selectmen are required to preside, without any express authority of a majority, so that if there be not an inherent power in a majority to act, the inhabitants of a town, by the sickness or absence of one man, may be deprived T>f their most important civil privileges. Further, it may be remarked, that the constitution itself, in its provisions for the choice of governor and senators, is necessarily founded upon the known qualities of this body to act by a majority, and p:rob-ably on the antecedent usage of the country ; for the selectmen are to call and preside at meetings for these purposes and to make return of votes.- There is no provision that a majority shall do these acts, and yet the practical construction has. ever been, .to receive the act of the majority as the act of the whole, and if it had not been so, the government would have been almost brought, to a stand many years ago. In framing the constitution, regard was had to the pre-existing character of the board of selectmen under the colonial and provincial governments, during which they without doubt acted by majorities. The statute of 4 W. & M. c. 13, § 4, (1692,) provides for the choice of three, five, seven and nine selectmen, like our statute of 1785, c. 75, without expressly giving power to the majority ; yet during the interregnum in 1777, a provision is made for supplying vacancies when a major part of the selectmen shall be absent in the army or otherwise ; which affords strong implication, that if a major part remained, the business of the town would not be interrupted.
We think therefore, that by ancient usage, as well as by fair construction of ancient statutes, by the necessary and practical construction of the constitution, and of the laws made under it, it is manifest, that in all cases in which power is given or duty imposed upon selectmen, that body is taken to be a qua cor poration, and must act by a majority.
The laying out of this road therefore was by the selectmen, and their doings were properly laid before the inhabitants of the town ; so that the only question remaining is, whether it was duly and legally approved and accepted by the town ; and *155 the only objection to this is, that the acceptance was, in terms, conditional, viz. “provided the expense does not exceed 500 dollars."
The vote on the town records stands thus, — “ Andover, Nov. 2d, 1818. There was accepted by the town, at an adjourned meeting of 15 Sept. 1817, a road laid out by the selectmen as follows, (description,) provided the expense do not exceed 500 dollars." This entry was in pursuance of a vote of the town-meeting at an adjournment of a meeting duly warned for this purpose.
It was objected that a conditional acceptance was irregular and void, but no authority was cited in support of the position, and there seems to be no good reason for it. The town might be satisfied of the convenience of the road, but apprehensive that it might be more expensive than it was represented to be, and having committed the care of constructing the road to the selectmen, this limitation of expense would require them to make a more careful examination,, so that if they found the cost would exceed the sum allowed, they would probably not proceed to make the road, but make report of the circumstances fo the town.
Or it might be, that individuals who expected some special advantages, would contribute all the money which might be wanted beyond the grant of the town. It is in this latter view, that the vote of acceptance by the town is principally objected to ; the restriction implying that the inhabitants were influenced in their vote by an expectation, perhaps by a stipulation, that a portion of the expense would be paid by interested individuals.
And it is argued that a vote passed under such inducements, is void, and renders the whole proceedings in regard to the road nugatory.
We apprehend that the argument on this part of the case proceeds upon a mistaken application of the decision of this Court in the case of Commonwealth v. Sawin,[1]
The road in question in that case was laid out by a committee appointed by the Court of Sessions, under an adjudica *156 ti on of that court, that the road prayed for was of public convenience and necessity. That adjudication, however, was expressly based upon the fact stated upon the record, that a portion of the expense was to be borne by individuals, so as to relieve the town through which the road was to pass, the court having stated that the public convenience was not so great as to demand the road at the entire expense of the town. It was plain then that there was no adjudication, that the road was of public convenience and necessity, and therefore all subsequent proceedings were void.
But in that same case, as well as in the earlier one in which the same principle was advanced, it was stated, that if the court shall adjudge the road to be necessary, without taking into view contributions which may be made towards the expense, any subsequent arrangement between the town and individuals, or any previous stipulation not known to nor acted upon by the court, the effect of which would be to relieve the town of part of the burthen, would not be unlawful, nor defeat the establishment of the road. The case before us does not afford any evidence, either in the records or by any testimony, that any bargain was made with the selectmen which induced them to lay out the road, or with the town to* induce them to accept it. At most it is but matter of inference, from the limitation of the sum to be expended by the town, that some persons stood ready to supply any deficiency ; but whether this was to be done by money, or by relinquishing damages, or by contribution of labor upon the road, does not appear, nor is there any reason, from the facts reported, to believe that the expense exceeded the sum allowed by the town ; but on the contrary, by the accounts rendered by the selectmen it would seem that nothing beyond $ 500 was expended. It is certain that no further expense has been brought upon the town ; so that the condition of the acceptance has been performed.
It is worthy of remark, that there is a palpable distinction between a public highway or county road, and a town or private way, in regard to the manner of laying them out. As to the former, there must be an adjudication that they are of' public convenience and necessity, to justify the appropriation of any man’s land to such a use. As to the latter, no such *157 adjudication is required. The selectmen are empowered, either personally or by such person as they shall appoint, to lay out, within their respective towns, particular or private ways for the use of such town only, or for the use of one or more individuals thereof, with a provision for indemnity for those over whose land such private roads may pass ; and the damages are to be paid by the town, if the road is of general benefit, otherwise by the individuals for whose use and benefit the way is laid out.
If a way may be so laid out when no part of the expense is to be borne by the town, it is not easy to see why, when the «.own is to be benefited, and at the same time some individual inhabitants are to receive a special advantage, the expense may not be apportioned.
Whether under the provision in our declaration of rights, land taken for roads of this description can be said to be appropriated to the public use, has never yet been made a question. If such an appropriation can be maintained, it must be on the ground that the power has been immemorially exercised, and that every man acquires and holds his real estate under the implied condition that it may be so appropriated, he having the indemnity provided by the law.
But however this may be, the town which has exercised this power and enjoys the appropriation, can never set up the illegality or unconstitutionality of their own act, as an excuse for neglecting duties which the law imposes on them as a con sequence of the act.
And it is a sufficient answer to most of the objections made to the verdict, that this road has been laid out and made by the town, used and improved by its inhabitants, opened for all travellers ; they are bound therefore to keep it in safe and convenient repair, and are answerable to all who suffer in their persons or property from its defects.[1] Let them discontinue it, if they would avoid the liability it imposes.

 See Revised Stat. e. 24, § 69; Howard v. Hutchinson, 1 Fairfield, 335; Belfast Academy v. Salmond, 2 Fairfield, 1.09.

 See Moffitt v. Jaquins, 2 Pick. (2d ed.) 331, note 1; First Parish in Sutton v. Cole, 3 Pick. 244, 245; Revised Stat. c. 2, § 6, art. 3; Andover v. Grafton, 7 N. Hamp. R. 298.

 See Dudley v. Cilley 5 N. Hamp. R. 558.

 See Copeland v. Packard, 16 Pick. 217; Revised Stat. c. 25, § 22; Reed t. Northfield, 13 Pick. 94 ; Bliss v. Deerfield, 13 Pick. 102.